[Sac. No. 1884. Department Two.—November 8, 1911.]

## WALLACE GALBREATH, Respondent, v. MANUEL S. SIMAS and CANDIDO ROSE, Appellants.

MINING CLAIM—SUCCESSIVE LOCATIONS—FAILURE TO DO ANNUAL ASSESSMENT WORK—FINDING—CONFLICT OF EVIDENCE.—In an action involving the question as to the right of possession of a placer mining claim as between successive locators, findings that the property was subject to location at the time the latter location was made, by reason of the failure of the prior locator to perform the required amount of annual assessment work, will not be disturbed when the evidence as to the character and value of such work is conflicting and there is evidence to the effect that the value of the annual work performed by the prior locator was less than one hundred dollars.

Id.—Inconsistent Ruling Regarding Admission of Evidence—Error Subsequently Cured.—Inconsistent rulings made by the trial court in regard to the admission of evidence of the prior locator with respect to his location are without prejudice if he is subsequently permitted to testify fully regarding all his acts with reference to that matter.

Id.—Cessation of Assessment Work—Failure to do Requisite Work for Two Successive Years—Relocation.—Where such prior location was made in December, 1905, upon the cessation of the locator to do assessment work in the year 1908, without having done the requisite amount of such work for either the years 1907 or 1908, the claim became subject to relocation. Under such circumstances the relocator did not have to wait until the expiration of the latter year before making his relocation.

Id. — Citizenship — Instruction — Referring to Location by Non-Citizen as Pretended Location.—In such an action, where the jury are properly instructed that only citizens or those who had declared their intention of becoming such could locate mining claims upon vacant unappropriated public lands of the United States, a further instruction in the same immediate connection, in which the court designated the prior location as a "pretended location," if the locator at the time it was made was found not to be a citizen, was not misleading.

APPEAL from a judgment of the Superior Court of Siskiyou County and from an order refusing a new trial. James F. Lodge, Judge.

The facts are stated in the opinion of the court.

Taylor & Tebbe, and James D. Fairchild, for Appellants.

C. J. Luttrell, and L. F. Coburn, for Respondent.

MELVIN, J.—Plaintiff sued to quiet his title as against defendants to a certain placer mining claim known as the "Smugler" and to restrain said defendants from cutting wood or making excavations on said property. Judgment was rendered in favor of plaintiff. From this judgment and from an order denying their motion for a new trial the defendants appeal.

The court found that the Smugler claim was a valid mining location made in accordance with the statutes of the United States and that it covered a large part of the territory to which defendants asserted title and known as the Blue Jay

placer mine; that the alleged title of defendants under deed
from one Gallagher who had located the Blue Jay in Decem-
ber, 1905, was invalid as against plaintiff who located the
Smugler claim in December, 1908, because neither Gallagher
nor his successors in interest had performed the required
assessment work on the Blue Jay claim; and that the land
covered by the Smugler claim was open to location when Gal-
breath located thereon in December, 1908.

The main contention of appellants is that the findings are
not supported by the evidence. They maintain: 1. That Gal-
lagher's citizenship at the time he located the Blue Jay placer
claim was clearly proven; 2. That the proper amount of
assessment work was done by Gallagher in 1907; and, that
3. More than one hundred dollars' worth of work was done
on the property by Gallagher or those in privity with him
during the year 1908 and before the twenty-ninth day of
December of that year.

Upon the first point little discussion is necessary because
the other two questions were determined adversely to defend-
ants upon conflicting testimony. Gallagher was permitted to
testify fully with reference to the years he had spent in the
United States, his naturalization, the fact of his registration
in California in 1908 by presentation of a certified copy of his
naturalization papers to the county clerk of the county in
which he lived and of his participation in elections ever since.
Whether or not this was the best evidence need not be con-
sidered here, for it seems to have been introduced without
objection. Respondent concedes that it was sufficient if be-
lieved to justify the jury in the conclusion that Gallagher
was a citizen, but calls the attention of the court to the im-
peachment of Gallagher as a witness which, he asserts, was so
complete that probably nothing which Gallagher said was
accepted as verity by the jurors.

Regarding the work done on the Blue Jay claim in 1907 and
1908, the evidence, as we have said before, was conflicting.
Gallagher himself testified that in the year 1907 he performed
more than one hundred dollars' worth of work, giving in detail
the items of labor. He was contradicted by other witnesses
in regard to the details of the work which, according to his
statement, was performed by him during that year. David
Ream testified that no work was done on the Blue Jay in

1907; Zoll contradicted Gallagher with reference to the alleged removal by ground sluicing of a quantity of earth twenty-four feet long, nine feet wide and three feet thick, from the Blue Jay claim. Gallagher stated that he was accustomed to go by way of a certain shaft on the property into a tunnel where there was water and that he frequently performed work in said tunnel, but according to the witness Ream there was no connection between the shaft and the tunnel; the tunnel itself was on the Hawkins claim and not within the lines of the Blue Jay at all; and there was no water in said tunnel. Similar testimony was given by witness LeMay. There were certain other contradictions of Gallagher's testimony which need not be considered here in detail. It is sufficient to say that they were of enough importance to justify the jury in finding against the defendants with reference to the value of the work performed upon the claim in 1907.

Appellants do not say that Gallagher performed one hundred dollars' worth of work on the Blue Jay claim in 1908, but they do most positively assert that they, as the equitable owners of the property, put work upon it as the representatives of Gallagher to an amount greatly in excess of one hundred dollars. They say that there was an oral agreement between themselves and Gallagher which amounted to a lease with the privilege of purchasing, the understanding being that appellants were to do the requisite amount of work which was to apply on the price to be paid for the property. The Blue Jay claim was adjacent to the patented claim which was called by all the witnesses the "Hawkins." This was the property of the appellants. The Blue Jay was on higher ground than the Hawkins. In 1908 the appellants built a reservoir which was partly on the land covered by the Blue Jay claim and dug a ditch through that territory for a distance of more than eight hundred feet. Respondent contends in opposition to this that appellants had no contract with Gallagher; that the work done on the Blue Jay was not for the benefit of that claim, but merely to get a better head of water for mining operations on the so-called Hawkins claim; and that the jury was justified in the conclusion that the work performed by appellants in 1908 on the Blue Jay was of a value less than one hundred dollars.

One witness testified that while Rose was at work on the

reservoir he was asked if he was not working on Gallagher's land. He replied with an uncomplimentary reference to Gallagher who, he said, claimed "the whole country" but did not work on anything. Witness LeMay told while on the stand of a conversation which he had had with Gallagher in October, 1908, wherein Gallagher admitted in effect that his assessment work had not been done and made no reference to any contract to sell his property; but the most important evidence offered by plaintiff to show that no contract existed for the sale of the property by Gallagher to the appellants, was that which indicates that a line was run between the Hawkins and the Smugler claims by a surveyor who had been engaged for that purpose, establishing the boundaries between these claims to the satisfaction of the parties hereto. The surveyor Nolan testified that appellant Simas, respondent Galbreath, and Ream (who claimed an interest in the Smugler with Galbreath) were present when he ran the line and were satisfied with it. He was corroborated by both Ream and Galbreath, the last named witness also testifying that appellant Rose suggested the employment of the surveyor and agreed to pay half the expense of establishing the line between the two claims. It seems hardly credible that, if Simas and Rose were the equitable owners of the Blue Jay, they would have thus recognized Galbreath's rights in the Smugler which included practically the same territory as the Blue Jay and at a time long subsequent to the performance by them of the work which as they asserted at the trial had been done for the purpose of perfecting Gallagher's title. There is also much force in the position of respondent that the work of Rose and Simas was for the benefit of the Hawkins claim. Much of the Blue Jay is up hill from the reservoir, ditch, and penstock which were constructed by appellants and the water could be advantageously used on a small part only of that claim.

Upon the subject of the value of the improvements constructed by appellants in 1908 there was a wide diversity of testimony. Both Rose and Perry testified that the reservoir was seventy feet long and from twenty-five to thirty-five feet deep and that the ditch was approximately six hundred feet long, twenty inches in width and twenty inches in depth. The cost of the ditch and the dam they asserted was two hundred dollars. Appellants' witness Graves, a civil engineer, esti-

mated that the dam constructed by them contained 48.6 cubic
yards of earth. Ream testified that the dam could be built
for forty dollars and the ditch for twenty-five dollars. Wit-
nesses LeMay, Mathewson, and Utne, all experienced men in
such matters, made estimates somewhat lower. It will thus
be seen that there was a distinct conflict of evidence upon the
subject of the value of work done by the appellants in 1908
and we cannot say that the jury was not justified in conclud-
ing that the improvements made that year were worth less
than one hundred dollars.

There is no merit in appellants' contention that no evidence
was offered by Galbreath of the posting of his original notice
of location and the recordation of a copy thereof. Galbreath
and one other witness testified to these facts.

On the cross-examination of Galbreath he was asked if Ream
had not previously located the Smugler claim and an objec-
tion to the question was sustained. This ruling was proper,
but even if it had been erroneous it was cured by subsequent
testimony that Ream had been a former claimant and had.
forfeited his right to the property long before any of the
transactions connected with this case occurred. Ream was
also permitted, over an objection, to testify how one of the
corners of the Hawkins claim was marked according to his
observation made at the time Mr. Nolan was running the line
between the Hawkins and Smugler claims. If this was error
we cannot see how appellants could possibly have been harmed
by it.

Appellants complain that Gallagher's answer to a question
on direct examination was stricken out. He had answered in
the affirmative the question: "Are you the locator of this
claim?" On cross-examination, however, he was compelled to
answer the question: "How did you happen to locate this
claim that had been located and held by Dave Ream and
others?" Even conceding that the rulings of the court on
these two matters were not consistent we cannot say how
appellants were prejudiced for subsequently Gallagher testi-
fied fully regarding all his acts with reference to the location
of the Blue Jay.

Appellants also complain of an instruction in which the jury
was told that respondent did not have to wait until January
1, 1909, before relocating the claim unless the assessment work

had been fully performed in 1907. The language criticised is not properly subject to objection when taken in connection with the preceding portion of the instruction which was in part as follows: "If you find that the defendants did construct the reservoir in Stewart Gulch, and did construct the ditch testified to in the year 1908, under an agreement with Gallagher to do his assessment work upon the Blue Jay claim, but that such work was not of the value of $100.00, and that they did not continue to, in good faith, complete such assessment work but on the contrary did cease work on or about the month of November, then I charge you that the plaintiff had the right to go upon said land and locate it on or about the 29th day of December, of that year." By this instruction the jury was told that if a proper amount of assessment work was not performed in either 1907 or 1908, respondent did not have to wait until the expiration of the latter year before relocating the claim. Applied to the facts of the case we find no error in the instruction. By another instruction the jurors were told that only citizens or those who had properly declared their intention of becoming such citizens, can locate mining claims upon vacant unappropriated public land of the United States, and that if a person not a citizen go through the form of locating a claim and selling it to others, he has nothing to sell and the buyers acquire nothing by the purchase. The instruction then proceeds as follows: "If, therefore, you find that defendants hold the ground in dispute herein by virtue of a sale from P. J. Gallagher, who held it by a pretended location, but who was not a citizen of the United States at the time he made such pretended location, then I charge you that the defendants have no title whatever to said premises and you must find for the plaintiff." Appellants contend that by this language the jurors were told that Gallagher's location was a *pretended* one and that this was an instruction upon a matter of fact. A reading of the quoted language in view of that which immediately precedes it entirely destroys this argument. The jury was instructed that Gallagher's claim was a "pretended one" only in the event of their finding that he was not a citizen of the United States. There was nothing misleading in the instruction.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.